WINN *v.* SCHNEIDER.

4-7095                                    182 S. W. 2d 216

Opinion delivered July 3, 1944.

*Oscar H. Winn,* for appellant.

*O. T. Ward,* for appellee.

GRIFFIN SMITH, Chief Justice. Isaac Williamson borrowed from Oscar Winn and used the money in paying part of the purchase price of land in Pulaski County. Williamson, unmarried, had two sisters: Nora F. Schneider and Rosa L. Karau. They joined their brother

in a mortgage to Winn. The two sisters were Williamson's nearest of kin when he died in 1935 or 1936.

Having inherited the property, the sisters made small payments from time to time, but when default continued unreasonably Winn foreclosed. The mortgage had been recorded January 23, 1934. Decree in Winn's favor was rendered April 17, 1942.

Virginia M. Borden intervened, alleging that on February 26, 1937, Mary L. Rush purchased the land from the State, its title having been acquired at a tax sale. Mary L. Rush (September 8, 1937) sold to Marguerite Fields, and Marguerite Fields (June 24, 1939) quitclaimed to intervener. Adverse possession was alleged from the early months of 1937. Pope's Digest, § 8925.

Various defenses were interposed by Winn, who contended that the State's tax deed was a cloud upon his title.

It was decreed September 10, 1942, that Virginia M. Borden had been in actual adverse possession for more than two years under color of title.

September 14 Winn moved to set aside the decree. Amendments to the complaint were filed January 6 and February 3, 1943. Only the original motion and the second amendment are abstracted. Allegations were that there was an agreement between attorneys in open court that additional witnesses would be heard and other exhibits received, this to be permitted "after the Judge returned from his vacation." It was then alleged that, without notice to the plaintiff, the intervener secured the decree of September 10, ". . . whereas, on the eighty day of September the plaintiff, *pro se,* informed the Court that within a few days—as soon as witnesses could be had and notice given to the intervener's attorney—a day could be set for hearing and finishing the trial. The Court suggested that attorneys agree upon a day, and it would hear the balance of the witnesses. . . ."

Substance of the motion and amendment is that ". . . the decree is a complete breaking of good faith,

law, justice, and the agreement made after about a brief hour of hearing.'' It was also alleged that fraud had been practiced upon the plaintiff and upon the Court. The decree, asserted Winn, was a mere word picture, due to the fact that the trial was recessed under an agreement that the plaintiff might present witnesses not then available. Prayer was that the ''premature'' transaction be expunged and that the cause proceed to final hearing.

February 3, 1943, the Court dismissed Winn's motion, allowing the plaintiff thirty days within which to file proof in the form of depositions.

Partial transcript was filed in this Court March 8, 1943. Certiorari issued for the purpose of having the complete record brought up. Various depositions, exhibits, etc., were attached to the return of the writ, lodged with the Clerk of the Supreme Court March 16, 1944.

If, as appellant contends, the decree of September 10 was not final, an appeal did not lie. The mere circumstance that it was included in the record filed March 8 does not, standing alone, constitute an appeal, although this occurred within six months from date of rendition. What appears most probable is that Winn, in support of his contention that the case had not been closed, insisted upon taking additional proof to sustain his assertion that an agreement made in open court allowed further time.

The method of presenting testimony is violative of the rules of this Court. Interspersed with the so-called abstract of depositions and oral testimony taken before the Court are personal comments, observations as to the effect of certain statements, imputations that witnesses swore falsely, exemplification—and, in effect, annotations. One cannot distinguish between what the abstracter intended to present as language of the witness (or what the testimony would be in narrative form) and findings of facts with conclusions of law by appellant. Result is that Judges are driven to the transcript, or must determine as best they can what part of the evidence is germane.

We would not retreat from this service if by voluntarily assuming it there could be any assurance of deciding the case on its merits. As a matter of fact we have declined to dismiss on account of violations of rules. Mention of difficulties is made only for the purpose of emphasizing the possibility of overlooking evidence that from appellant's point of view is controlling, but which as presented cannot be sifted from involved sentences and weighed in the scales appellant would provide.

An examination of the bill of exceptions—a task we are not required to perform—is not convincing that the Chancellor decided the case against a preponderance of the evidence. On motion to vacate the decree the Court was vested with broad discretion. The Chancellor was in position to know what occurred in respect of any agreement not to close the case until additional evidence had been presented; but even if it should be said (which we do not hold) that a misunderstanding militated to appellant's disadvantage, still the facts disclosed by additional depositions, when considered in connection with evidence in the original record, did not require that the decree be vacated.

Affirmed.

Mr. Justice KNOX disqualified and did not participate in the consideration or determination of this case.